**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| MS2 CAPITAL, LLC, a Georgia Limited Liability Company, | |
| Plaintiff, | Case No.: 2:26-cv-01319-RMG |
| v. | JURY TRIAL DEMANDED |
| RAJ SUTHAR, an individual, and HUANG HUANG CHEN, a/k/a "ROMAN," a/k/a "COOKERFLIPS," a/k/a "WEFREEZETIME," a/k/a "TIMEFREEZE," a/k/a "LUCKY CHEN," an individual, and JOHN DOES 1-10, | |
| Defendants. | |

<u>**VERIFIED COMPLAINT**</u>

NOW COMES Plaintiff Ms2 Capital, LLC ("Ms2 Capital" or "Plaintiff"), by and through its undersigned attorneys, Joseph P. Carlasare of Amundsen Davis, LLC and Mark V. Gende, Esq., Sweeny, Wingate & Barrow, PA brings this Verified Complaint against Defendants Raj Suthar ("Suthar"), Huang Huang Chen a/k/a "Roman" a/k/a "CookerFlips" a/k/a "WeFreezeTime" a/k/a "TimeFreeze" a/k/a "Lucky Chen" ("Chen"), and John Does 1–10 (collectively, "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1. This action arises from a calculated cryptocurrency fraud scheme through which Defendants stole approximately $3.7 million from Plaintiff. Acting in concert, Defendants induced Plaintiff to transfer Solana ("SOL") cryptocurrency for purported cryptocurrency ventures that were never legitimately pursued.

2. Every dollar Plaintiff transferred was immediately routed through ChangeNOW, a non-custodial cryptocurrency exchange favored by cybercriminals for its anonymity, in a laundering operation that Defendant Chen pre-configured before Plaintiff's funds ever left its wallet.

3. This scheme depended on trust and deception. Defendant Suthar cultivated a relationship of personal trust and confidence with Spruill in Charleston, South Carolina. When Suthar had earned Spruill's trust, he exploited it by introducing Spruill to various business ventures (*e.g.* HTTP, JPGdotfun, Myth, and others[1]) before introducing him to Defendant Chen.

4. Upon information and belief, Defendant Chen operated anonymously under the Telegram handle @WeFreezeTime while publicly maintaining the well-known cryptocurrency persona @CookerFlips on X (formerly Twitter).

5. @CookerFlips holds himself out as a crypto trader/influencer who goes by Cooker / Kms.eth and publicly describes himself as the founder of PastelAlpha. His posts center on crypto trading, Solana/memecoins, and sports/esports betting. He has appeared in crypto podcast interviews discussing trading and betting.

6. Upon information and belief, @CookerFlips' real name is Defendant Huang Huang Chen.

7. Suthar vouched for Chen's identity and credentials. In turn, Chen leveraged the reputation of @CookerFlips, with its 133,400 followers and association with the Pastel Alpha brand, to create an aura of legitimacy that induced Plaintiff to transfer millions of dollars in cryptocurrency.

---

[1] Many of these projects were "memecoins." A "memecoin" is a type of cryptocurrency token that derives its perceived value primarily from internet culture, social media hype, and community speculation rather than from any underlying technology, utility, or fundamental economic purpose. Memecoins are typically launched with minimal development effort and are highly susceptible to price manipulation. "JPGdotfun" was a non-fungible token exchange that never materialized.

8. Within the very Telegram group through which the fraud was perpetrated, Chen (as @WeFreezeTime) repeatedly referenced "Pastel," implying PastelAlpha, the cryptocurrency community exclusively operated by @CookerFlips, as his own community.

9. Based on Suthar's introduction and Chen's fabricated venture proposals, Plaintiff transferred approximately $2.5 million to Chen and approximately $1.2 million directly to Suthar for related projects.

10. None of these ventures materialized. None of these funds have been returned. Plaintiff's total loss exceeds approximately $3.7 million.

11. Plaintiff brings this action to recover its losses, to hold Defendants jointly and severally liable for fraud, conversion, civil conspiracy, and related claims, to obtain punitive damages, and to obtain emergency relief freezing Defendants' assets, including on-chain cryptocurrency and real property acquired with the proceeds of the fraud, before those assets are further dissipated or concealed.

**THE PARTIES**

12. C. Micah Spruill is an individual and citizen of the State of South Carolina, residing in Charleston, South Carolina. Spruill is the Managing Partner of Ms2 Capital, LLC.

13. Plaintiff Ms2 Capital, LLC is a Georgia limited liability company with its principal place of business at 850 Morrison Drive, Suite 375, Charleston, South Carolina 29403. However, Plaintiff is a citizen of South Carolina for diversity purposes because its two members, C. Micah Spruill and his wife, are citizens of South Carolina.

14. Defendant Raj Suthar ("Suthar") is an individual, upon information and belief approximately 30 years of age, who formerly resided in Charleston, South Carolina and currently resides in or around Denver, Colorado. Suthar is self-employed in his family's hotel business and

has a history of launching cryptocurrency tokens on the Solana blockchain platform Pump.fun. Suthar maintains multiple online identities: Telegram handles @thecapitalcartel and @godcandleprints, X handle @godcandle, and email address contact@rajsuthar.com. Suthar also operated a defunct Google reviews business at devmandeep.com. Upon information and belief, Suthar maintains offshore bank accounts that he uses for tax evasion, as he has admitted in written communications.

15. Defendant Huang Huang Chen ("Chen"), also known as "Huang Chen," "Lucky Chen," "Roman," "CookerFlips," "TimeFreeze," and "WeFreezeTime," is an individual who resides in San Diego, California.

16. Upon information and belief, Defendant Chen is the individual who operated the Telegram account @WeFreezeTime, who directly received Plaintiff's cryptocurrency transfers totaling approximately $2.5 million[2], and who pre-configured the laundering of those funds through ChangeNOW. Chen is associated with the X account @CookerFlips, the Telegram account @CookerFlips, and the cryptocurrency business Pastel Alpha (@PastelAlpha on X).

17. John Does 1–10 are individuals and/or entities whose identities are presently unknown but who participated in, aided and abetted, or conspired with Suthar and/or Chen in the scheme described herein, including but not limited to: individuals who had access to the @WeFreezeTime Telegram account, individuals who controlled destination wallets on ChangeNOW, and Key Opinion Leaders ("KOLs"), marketers, or other participants engaged to promote the fraudulent

---

[2] This figure represents the cryptocurrency transferred to wallet addresses directed by Chen (as @WeFreezeTime), comprising the Aeturnum and SZN venture transfers. Separately, Plaintiff transferred approximately $1,100,000 (6,107.88 SOL) directly to Defendant Suthar across three categories: (1) approximately $360,000 (2,279.41 SOL) beginning in or around April 2025 through July 2025, prior to Suthar's introduction of Chen; (2) approximately $411,500 (2,308.47 SOL) for ventures known as HTTP, JPGdotfun, Myth, and other token launches in or around August 2025; and (3) approximately $327,000 (1,520 SOL) for the Aeturnum venture, with the balance of the Aeturnum funding sent to Chen-directed addresses, as well as $81,000 for SZN. See infra ¶¶ 50, 66–69. Upon information and belief, Chen may also have been a recipient of some of the funds sent to Suthar.

ventures (including but not limited to individuals known as "Orangie" (X handle @orangie), "Kiko", "Eric from Zurich"). Plaintiff will amend this Complaint to identify the John Doe Defendants when their identities are ascertained.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity of citizenship exists. Plaintiff is a citizen of South Carolina. Defendant Suthar is a citizen of Colorado and Defendant Chen is a citizen of California.

19. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's claims arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims, which form part of the same case or controversy.

20. This Court has personal jurisdiction over Defendant Suthar because he formerly resided in Charleston, South Carolina, cultivated a business relationship with Spruill in South Carolina over a period of years, directed ongoing electronic communications into South Carolina *via* Telegram, text message, telephone, FaceTime, and X, and committed tortious acts directed at and causing injury to a South Carolina resident and South Carolina limited liability company. Suthar's contacts with South Carolina were continuous, systematic, purposeful, and directly related to the claims asserted herein.

21. This Court has personal jurisdiction over Defendant Chen because, upon information and belief, he directed communications to Spruill in South Carolina *via* Telegram, solicited and received cryptocurrency transfers originating from South Carolina, participated in a Telegram group specifically created to conduct business with a South Carolina resident, discussed specific

investment amounts and launch dates with a South Carolina resident, and committed tortious acts directed at and causing injury to a South Carolina resident and South Carolina limited liability company. Chen's contacts with South Carolina were purposeful, deliberate, and directly related to the claims asserted herein.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including Plaintiff's communications with Defendants, Plaintiff's cryptocurrency transfers, and the injury suffered by Plaintiff.

<strong>CHOICE OF LAW</strong>

23. South Carolina substantive law governs the majority of Plaintiff's claims. The fraudulent misrepresentations at issue were received and relied upon by Spruill in South Carolina, the cryptocurrency transfers originated from South Carolina, and Plaintiff's injury was felt in South Carolina.

24. Certain claims are asserted under California law against Defendant Chen, specifically California Business and Professions Code § 17200 et seq. and California Penal Code § 496(c). These California statutes apply to Chen because: (1) Chen is a California resident who, upon information and belief, operated the @WeFreezeTime Telegram account from California, directed the fraudulent scheme from California, and received Plaintiff's stolen cryptocurrency in California; (2) Chen's ChangeNOW swap transactions were, upon information and belief, initiated and configured from California; (3) Chen's business Pastel Alpha operates from California and was integral to the fraudulent scheme; (4) California Penal Code § 496(c) and Bus. & Prof. Code § 17200 are regulatory statutes that apply to wrongful conduct occurring within California, and the receipt and disposition of stolen property occurred in California; and (5) California has the

most significant relationship to the claims against Chen for receipt of stolen property and unfair business practices, as those wrongs were completed in California.

## GENERAL ALLEGATIONS

25. Spruill is the Managing Partner of Ms2 Capital, LLC, based in Charleston, South Carolina.

26. Ms2 Capital is the victim of the fraud perpetrated by the Defendants. All of the funds stolen by Defendants came from Ms2 Capital.

27. At some point in 2022, Spruill first met Suthar in person in Charleston, South Carolina. Suthar was living in Charleston at the time and handled Search Engine Optimization ("SEO") and web development work for a friend's business. Suthar presented himself as having web development expertise and a shared interest in cryptocurrency.

28. During 2023 and 2024, Spruill and Suthar maintained a casual acquaintanceship, periodically discussing personal matters and potential business opportunities.

29. In 2024, Suthar approached Spruill offering web development services, an offer Spruill declined.

30. Upon information and belief, in 2024 Suthar relocated to Colorado, where his family operates a hotel business. He told Spruill that his family owned several Holiday Inn-type hotels in or around Denver, Colorado and in New Mexico. Suthar claimed that he relocated to help with the family business.

31. In or around April of 2025, Spruill and Suthar reconnected through X.

32. Suthar told Spruill that he was actively doing Solana memecoin launches on the Pump.fun platform.

33. From April through July 2025, Spruill and Suthar had regular conversations about Suthar's token launch activities.

34. Suthar was planning to launch tokens based on various themes but acknowledged that the token launch market had become increasingly competitive and that he needed additional resources and connections to succeed.

35. In or around July 2025, Suthar told Spruill that he had a close associate who could transform their token launch efforts. Suthar represented that this individual was "a buddy of mine who is a very well-known influencer in the space and has a huge following" who "could help us get one of these off the ground."

36. Suthar stated that this person, first identified as "Roman," had "the connections, resources, and team" needed for successful launches and had recently achieved "a very successful" launch.

37. When Spruill later asked Suthar how he had come to know "Roman" and thought to bring him into their venture, Suthar explained that in 2024, he and Roman had been "in similar trader circles" and that Suthar first communicated with Roman through Roman's official @CookerFlips Telegram account.

38. At that time, the @CookerFlips account was the Admin/Owner of the PastelAlpha Telegram group, before PastelAlpha migrated to Discord.

39. Suthar stated that after chatting for a while, @CookerFlips passed him the @WeFreezeTime handle, telling Suthar it was his anonymous/alternative account for discussing token launches and activities he wanted to keep separate from his public @CookerFlips persona.

40. Suthar then created a new Telegram group and brought "Roman" (Chen, operating as @WeFreezeTime) into the chat with Spruill. The messages of this group chat show:

  a. Suthar introduced @WeFreezeTime and established the framework for a token launch collaboration;
  b. @WeFreezeTime dove into token launch economics and projections and specified what he would personally invest and what each of Suthar and Spruill would contribute for the launch;

   c. @WeFreezeTime stated that he would "call on Pastel to push," an explicit reference to using the PastelAlpha community, which is exclusively operated by @CookerFlips to promote the token launch;

   d. @WeFreezeTime noted that funds were safe after transfers were made;

   e. @WeFreezeTime repeatedly referenced "Orangie" and that "Orangie is in too," referring to a prominent cryptocurrency influencer (X handle @orangie) who is a close friend of @CookerFlips and who publicly interviewed @CookerFlips on a *YouTube* podcast. See https://www.youtube.com/watch?v=cm3n3zNTZNo

41. At some point in August of 2025, Suthar told Spruill that "Roman" was @CookerFlips in a telephone call.

42. When Spruill asked Suthar why Roman/Chen used the @WeFreezeTime account, Suthar claimed it was to keep his public @CookerFlips persona insulated from token launch activities because "usually they eventually crash and people lose money and he doesn't want his real life reputation [*i.e.* Cooker] and business [*i.e.* Pastel] to be tainted."

43. Upon information and belief, @WeFreezeTime and @CookerFlips are the same person: Defendant Huang Huang Chen. This allegation is supported by substantial direct and circumstantial evidence.

44. On August 15, 2025, Suthar mentioned in the Telegram group chat with Spruill and @WeFreezeTime that @WeFreezeTime is called "cooker."

45. @WeFreezeTime exchanged sensitive information with Suthar *via* Protonmail using the email address cookerflips@proton.me, an address incorporating the @CookerFlips handle.

46. Suthar, who claimed he had over 20 voice communications with @WeFreezeTime, confirmed that @WeFreezeTime's voice was "exactly the same" as the voice in @CookerFlips' YouTube interviews and Twitch streams.

47. Suthar recalled at least two occasions where he shared a newly launched token contract address with @WeFreezeTime, and within minutes, @CookerFlips posted those same links in the

"Gambles" channel of the PastelAlpha Discord, demonstrating real-time coordination that is consistent with a single person operating both accounts.

48. @WeFreezeTime stated in the Telegram group with Spruill that he was "32 years old." Upon information and belief, this is the same age as Chen.

49. @WeFreezeTime admitted to running alternative/"alt" accounts on his Discord server (*i.e.* PastelAlpha), a practice consistent with operating the @WeFreezeTime account itself.

**THE FRAUD**

50. During 2025, Plaintiff sent Suthar approximately $1.2 million in SOL. These funds were purportedly for investments that Suthar was going to manage directly.

51. On July 24, 2025, Suthar sent a spreadsheet outlining these transfers:

Launch - Sheet1 (1)

| Launch Details // Supply | | | |
|---|---|---|---|
| | USD | SOL | SOL PRICE |
| Raj | 750K USD | 3971.405878 | $188.00 |
| Micah | 550K USD | 2986 | $188.00 |
| Roman | 557K USD | 2949.430765 | $188.00 |
| | | | |
| **Launch Details // Overhead 1** | | | |
| | USD | SOL | SOL PRICE |
| Raj | 23.3K | 121.78 | $188.00 |
| Micah | 23.3K | 121.78 | $188.00 |
| Roman | 23.3K | 121.78 | $188.00 |
| | | | |
| **Launch Details // Overhead 2** | | | |
| | USD | SOL | SOL PRICE |
| Raj | 75K | 397.14 | $188.00 |
| Roman | 75K | 397.14 | $188.00 |

52. Before any return on the initial investments with Suthar (or return of assets), Suthar then recommended that Plaintiff collaborate with Chen on additional projects.

53. Based on Suthar's introduction and the fabricated venture proposals, Plaintiff agreed to collaborate with Suthar and Chen (as @WeFreezeTime) on a cryptocurrency venture known as "Aeturnum."

54. Between July 16, 2025 and January of 2026, Plaintiff sent transfers of SOL cryptocurrency to wallet addresses provided by Chen (as @WeFreezeTime), with an aggregate contemporaneous value of approximately $2.5 million.

55. Each transfer was sent from Spruill's self-custodial wallet to addresses specified by Chen. The specific transfers are each verified on the Solana blockchain.

56. A professional forensic investigation has confirmed that each of the wallet addresses to which Plaintiff sent SOL for the Aeturnum venture was a deposit address associated with ChangeNOW, a non-custodial instant cryptocurrency exchange operated by CHN Group LLC, incorporated in Saint Vincent and the Grenadines, and has further established that the funds were immediately laundered through a pre-configured swap workflow, as described below.

57. Chen (as @WeFreezeTime) directed Plaintiff to send SOL to wallet addresses that Chen identified as ChangeNOW deposit addresses.

58. Chen represented that routing the funds through ChangeNOW was necessary to support the token launch ventures, including by enabling the ability to promote the token without revealing the funding source. Plaintiff relied on this representation and sent funds to the ChangeNOW addresses as directed.

59. ChangeNOW does not require Know Your Customer ("KYC") verification when orders are created, assigns one-time disposable deposit addresses, permits cross-chain swaps, and

executes transactions automatically. Blockchain intelligence providers, including Elementus, have publicly identified ChangeNOW as "a popular choice for money laundering by cyber criminals due to the anonymous nature of the platform[]."

60. The use of ChangeNOW deposit addresses as the receiving wallets means Chen pre-orchestrated the laundering of Plaintiff's funds before those funds were transferred. The reconstructed workflow, based on the mechanics of the ChangeNOW service, is as follows:

a. Chen initiated a swap order at ChangeNOW, selecting SOL as the incoming asset type, selecting his preferred outgoing asset type and destination blockchain, and entering his own destination wallet address;

b. ChangeNOW generated a unique, one-time deposit address tied to Chen's specific swap order;

c. ChangeNOW received the incoming SOL, swept it to an internal hot wallet, executed the pre-configured swap (potentially converting to another cryptocurrency and/or bridging to a different blockchain), and automatically sent the equivalent value, less a small fee, to Chen's pre-selected destination address.

d. Chen never had to touch or directly receive Plaintiff's SOL, yet he received the full value of every transfer at his chosen destination, in his chosen asset type, on his chosen blockchain. The on-chain trail terminates at ChangeNOW's hot wallet.

61. For example, the September 1, 2025 transfer: Spruill sent 470 SOL to deposit address DgZEuaVRZ5RTzTD1DTFEqKxPoPes9DC7P4CcgWMdKzhZ. Attribution data confirmed this as a ChangeNOW deposit address.

62. All 470 SOL were subsequently swept to ChangeNOW hot wallet G2YxRa6wt1qePMwfJzdXZG62ej4qaTC7YURzuh2Lwd3t.

63. Beyond this point, the assets cease to be attributable to the transaction counterparties and further on-chain tracing is futile without subpoena authority.

64. This pattern was repeated for all Aeturnum transfers.

65. Upon information and belief, nearly all transfers were similarly directed to ChangeNOW (or an equivalent mixer) deposit addresses and laundered in the same pre-orchestrated manner.

66. Upon information and belief, all direct transfers to Suthar were also similarly directed to ChangeNOW deposit addresses (or an equivalent mixer) and laundered in the same pre-orchestrated manner.

67. As described in Paragraph 50, in addition to funds sent directly to Chen, Plaintiff also transferred approximately $1.2 million in SOL directly to Suthar for related cryptocurrency projects that Suthar promised to launch. These projects included, upon information and belief, ventures known as HTTP, JPGdotfun, Aeturnum, and Myth, among others.

68. These transfers were made on-chain in SOL in the same manner as the transfers to Chen.

69. None of these projects materialized. Suthar has never returned any funds and has provided no accounting of how the $1.2 million was used.

70. Upon information and belief, some or all of the funds sent directly to Suthar were either retained by Suthar or forwarded to Chen under the guise of being "folded into" the larger ventures. No verification of any such forwarding has been provided.

71. Upon information and belief, Suthar has been deeply involved in the operational aspects of the ventures. He participated in negotiations for marketing calls with crypto influencers, participated in group phone calls relating to the ventures, and exchanged sensitive information with Chen via Protonmail (using the address cookerflips@proton.me).

72. Suthar claimed in writing that he made payments to Chen using apparent User ID ("UID") 6281684901 on the Bybit cryptocurrency exchange, as well as internal transfers on the Bitget Exchange.

73. Bitget's internal transfer feature also allows intra-exchange transfers using a recipient's UID, which cannot be traced on-chain.



74. No records have been produced by Suthar to verify these transactions.

75. In text messages and Telegram messages to Spruill, Suthar made the following admissions: (1) he "feels responsible for all this"; (2) he "will take care of any losses incurred throughout it all"; and (3) he maintained "offshore bank accounts" that he uses explicitly for tax evasion.

76. In January of 2026, Spruill began pressing for answers about the lost funds and Chen's true identity.

77. Initially, Suthar indicated that he was a fellow victim and offered his assistance in finding Chen. Also in late January, Suthar claimed his assets were being liquidated and he was struggling financially.

78. On January 26, 2026, Chen (as @WeFreezeTime) wrote in Telegram and claimed that he had talked to "the team" and claimed a return of the funds was "in process":



79. Thereafter, Chen (as @WeFreezeTime) promised to make Plaintiff whole and return the funds in total.

80. Since February 1, 2026, Chen has gone silent.

81. Plaintiff contacted Chen *via* text message on his cell phone and on the X platform. He failed to respond to either of these messages.

82. On February 22, 2026, Plaintiff's counsel sent Suthar a formal demand letter and document preservation notice *via* electronic mail (contact@rajsuthar.com) and text message, demanding contact no later than February 25, 2026. Suthar has failed to respond.

83. Suthar's abrupt silence, his written admissions of responsibility, his admitted use of offshore accounts to conceal funds from government authorities, and his refusal to respond to counsel's demand collectively demonstrate consciousness of guilt and active participation in the fraudulent scheme.

84. Chen's abrupt silence, his written admissions of responsibility, and his refusal to respond to correspondence demonstrate consciousness of guilt and active participation in the fraudulent scheme.

85. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including:

      a. Approximately $2.5 million in SOL transferred directly to Chen
      b. Approximately $1.2 million in SOL transferred directly to Suthar (some of which relates to the Aeturnum venture);
      c. Investigation and forensic analysis costs;
      d. Attorney's fees and costs;
      e. Lost investment opportunity costs;
      f. Pre- and post-judgment interest; and
      g. Other losses to be proven at trial.

86. Plaintiff's total direct losses exceed $3.7 million, exclusive of punitive, consequential, treble, and incidental damages.

## CAUSES OF ACTION

### COUNT I: FRAUD (INTENTIONAL MISREPRESENTATION)
### (Against All Defendants — South Carolina Common Law)

87. Plaintiff incorporates all preceding paragraphs.

88. Defendants made the following material misrepresentations of fact:

      a. Suthar represented that the proposed ventures would be legitimately pursued;
      b. Suthar promised to launch cryptocurrency projects for which he received $1.2 million from Plaintiff and never did;
      c. Chen (as @WeFreezeTime) represented that Plaintiff's funds would be used for legitimate ventures, when in fact Chen had already pre-configured ChangeNOW swap orders to launder the funds the moment they were transferred;
      d. Chen provided Plaintiff with wallet addresses for ChangeNOW under the guise that the ChangeNOW mixer would support the investments (allowing the ability to promote the token) rather than be used as a means to hide his fraudulent conduct.
      e. Chen leveraged the @CookerFlips reputation to create a false appearance of legitimacy, while using the @WeFreezeTime alias precisely to avoid accountability;
      f. Chen misrepresented the status of the projects and his intended use for funds;

g. Chen and Suthar misrepresented on multiple occasions in 2025 and early 2026 that the funds were safe and the ventures were in progress;

h. Chen and Suthar misrepresented on multiple occasions in 2025 and early 2026 that they would make Plaintiff whole;

i. Chen (as @WeFreezeTime) represented he secured $400,000 in profit, to be split equally between Plaintiff and Suthar and paid out within five days;

j. Defendants failed to deliver on numerous expectations regarding the token launches; and

k. Otherwise made fraudulent misrepresentations.

89. Defendants knew these representations were false, or made them with reckless disregard for their truth or falsity. Chen's pre-configuration of ChangeNOW swaps demonstrates actual knowledge and premeditation.

90. Defendants intended for Plaintiff to rely on their representations and transfer cryptocurrency.

91. Plaintiff relied on these representations to its detriment by transferring approximately $3.7 million in cryptocurrency.

92. It was reasonable for Plaintiff to rely on Suthar and the extensive, detailed discussions about the ventures that created an appearance of legitimacy.

93. As a direct and proximate result, Plaintiff suffered damages in excess of $3.7 million.

94. Defendants' conduct was willful, wanton, and in reckless disregard of Plaintiff's rights, warranting punitive damages under S.C. Code Ann. § 15-32-520.

## COUNT II: CIVIL CONSPIRACY
### (Against All Defendants — South Carolina Common Law)

95. Plaintiff incorporates all preceding paragraphs.

96. Defendants Suthar, Chen, and John Does 1–10 combined, agreed, and acted in concert to defraud Plaintiff by:

a. Using Suthar as a trusted intermediary to introduce Spruill to Chen and vouch for Chen's identity;

b. Having Chen operate under the @WeFreezeTime alias while referencing PastelAlpha, CookerFlips, and Orangie to create an aura of legitimacy;

c. Discussing venture economics, projections, investment amounts, and launch dates to give the venture the appearance of a real business;

d. Pre-configuring ChangeNOW swap transactions to launder every transfer immediately;

e. Using rolling deletion, Protonmail, anonymous accounts, and untraceable exchange transfers to conceal the conspiracy; and

f. Upon information and belief, sharing proceeds.

97. Each Defendant committed overt acts in furtherance of the conspiracy, as described throughout this Complaint.

98. As a direct and proximate result, Plaintiff suffered damages no less than $3.7 million.

99. Defendants' conduct warrants punitive damages.

## COUNT III: CONVERSION
### (Against All Defendants — South Carolina Common Law)

100. Plaintiff incorporates all preceding paragraphs.

101. Plaintiff was the rightful owner of the SOL cryptocurrency transferred to Defendants.

102. Defendants wrongfully exercised dominion and control over Plaintiff's property by:

a. Chen directing Plaintiff's SOL to ChangeNOW deposit addresses where the funds were automatically swapped and sent to Chen's own destination wallets;

b. Suthar accepting approximately $1.2 million for projects never launched and retaining the funds;

c. Chen, Suthar, and potentially others refusing to return Plaintiff's property upon demand.

103. Defendants' exercise of dominion and control was unauthorized, wrongful, and without Plaintiff's consent.

104. As a direct and proximate result, Plaintiff has suffered damages no less than $3.7 million.

## COUNT IV: NEGLIGENT MISREPRESENTATION
### (Against Defendant Suthar — South Carolina Common Law)

105. Plaintiff incorporates all preceding paragraphs.

106. In the alternative to Count I as to Suthar, under South Carolina law, negligent misrepresentation requires: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as a proximate result.

107. Suthar supplied false information to Spruill regarding Chen's identity, capabilities, and the nature of the ventures without exercising reasonable care to verify the truth of his statements.

108. Suthar had a direct pecuniary interest in making these representations. He was participating in the ventures and receiving direct funding from Plaintiff.

109. Given his relationship with Spruill, Suthar owed an elevated duty of care.

110. Spruill justifiably relied on Suthar's representations and suffered damages to be proven at trial.

### COUNT V: UNJUST ENRICHMENT
### (Against All Defendants — South Carolina Common Law)

111. Plaintiff incorporates all preceding paragraphs.

112. Plaintiff conferred a benefit of approximately $3.7 million upon Defendants by transferring cryptocurrency.

113. Defendants had knowledge of and appreciated the benefit conferred.

114. Defendants accepted and retained the benefit under circumstances making it inequitable for Defendants to retain the benefit without payment of its value to Plaintiff.

115. As a result, Defendants have been unjustly enriched in an amount no less than $3.7 million.

## COUNT VI: BREACH OF IMPLIED CONTRACT
### (Against All Defendants — South Carolina Common Law)

116. Plaintiff incorporates all preceding paragraphs.

117. By their course of dealing, communications, and conduct, including detailed discussions of venture economics, investment allocations, launch timelines, and crypto influencer marketing strategies, an implied contract was formed between Plaintiff and Defendants whereby Plaintiff would provide funding and Defendants would use those funds for legitimate venture development, act in good faith, and account for the disposition of funds.

118. Defendants breached the implied contract by laundering funds through ChangeNOW, failing to pursue the ventures, and failing to return funds.

119. As a direct and proximate result, Plaintiff has suffered damages in excess of $3.7 million to be proven at trial.

## COUNT VII: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### (18 U.S.C. § 1030 — Against All Defendants)

120. Plaintiff incorporates all preceding paragraphs.

121. Defendants knowingly and with intent to defraud accessed protected computers, including cryptocurrency exchange platforms (e.g. ChangeNOW, Bybit), messaging platforms (Telegram), wallet services, and related computer systems, and by means of such conduct furthered their intended fraud and obtained things of value, namely Plaintiff's cryptocurrency, exceeding $5,000 in value during any one-year period, in violation of 18 U.S.C. § 1030(a)(4).

122. The conduct described herein caused loss aggregating at least $5,000 during a one-year period as required by 18 U.S.C. § 1030(c)(4)(A)(i)(I).

123. Pursuant to 18 U.S.C. § 1030(g), Plaintiff may maintain this civil action for compensatory damages and injunctive relief.

124. Plaintiff seeks damages in excess of $3.7 million.

## COUNT VIII: AIDING AND ABETTING FRAUD
### (Against Defendant Suthar — South Carolina Common Law)

125. Plaintiff incorporates all preceding paragraphs.

126. Under South Carolina law, a party who aids and abets a tort is liable as a joint tortfeasor. A claim for aiding and abetting requires: (1) an underlying tort committed by the primary wrongdoer; (2) knowledge by the aider and abettor that his actions were assisting the primary wrongdoer's tortious conduct; and (3) substantial assistance by the aider and abettor in the commission of the underlying tort.

127. Chen committed the underlying tort of fraud by operating the @WeFreezeTime account, inducing Plaintiff to transfer cryptocurrency, and laundering the funds through ChangeNOW.

128. Suthar had knowledge that his actions were assisting Chen's fraud, or at minimum was willfully blind to the fraudulent nature of the scheme.

129. Suthar provided substantial assistance by serving as the trusted intermediary who introduced Spruill to Chen, vouching for Chen's identity and credibility, participating in venture communications, conducting negotiations, and lending his personal relationship with Spruill to induce the transfers.

130. As a proximate result, Plaintiff suffered damages no less than $3.7 million.

## COUNT IX: VIOLATION OF 18 U.S.C. § 1962(c) — RICO
### (Against All Defendants)

131. Plaintiff incorporates all preceding paragraphs.

132. This count is brought pursuant to 18 U.S.C. § 1964(c), which provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . may sue therefor in

any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

133. At all relevant times, Defendants Suthar, Chen, and John Does 1–10 constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4), specifically, an association-in-fact enterprise (the "Enterprise") (*i.e.* a group of individuals and entities associated together for the common purpose of defrauding cryptocurrency investors through fabricated token launch ventures, misappropriating investor funds, and laundering the proceeds).

134. The Enterprise was an ongoing organization.

135. The Enterprise engaged in, and its activities affected, interstate and foreign commerce. The Enterprise's activities involved: (1) interstate electronic communications between South Carolina, Colorado, and California; (2) cryptocurrency transfers across state lines and international borders; (3) use of interstate and international exchange platforms (*e.g.* ChangeNOW, Bybit, and others); and (4) the movement of stolen assets through the global cryptocurrency ecosystem.

136. The Enterprise is distinct from the individual Defendants. Each individual Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3) who conducted or participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

137. Defendants conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5), consisting of at least two acts of racketeering activity as defined in § 1961(1), occurring within ten years of each other.

138. The predicate acts of racketeering activity include, but are not limited to (1) Wire Fraud (18 U.S.C. § 1343) and (2) Money Laundering (18 U.S.C. § 1956).

139. Defendants, and each of them, knowingly conducted and attempted to conduct financial transactions involving the proceeds of specified unlawful activity (wire fraud and theft), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

140. Defendants, and each of them, transported, transmitted, and transferred in interstate and foreign commerce goods, wares, merchandise, securities, and moneys, of the value of $5,000 or more, knowing the same to have been stolen, converted, or taken by fraud.

141. Specific predicate acts include each SOL cryptocurrency transfer from Plaintiff's wallet in South Carolina to addresses controlled by Defendants in other states and countries, and each subsequent transfer of the laundered proceeds across state or national boundaries.

142. The predicate acts described above are related because they: (1) had the same or similar purposes (*i.e.* to defraud Plaintiff and misappropriate its cryptocurrency); (2) had the same results (*i.e.* the theft and laundering of Plaintiff's funds); (3) had the same participants (Suthar, Chen, and the John Does); (4) were committed through the same methods (fabricated venture proposals communicated via Telegram, followed by transfers to pre-configured ChangeNOW deposit addresses); and (5) were otherwise interrelated by distinguishing characteristics that are not isolated events.

143. The predicate acts form a pattern.

144. By reason of the Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property in an amount no less than $3.7 million.

145. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold its damages plus the costs of this suit, including reasonable attorney's fees.

2:26-cv-01319-RMG     Date Filed 03/27/26     Entry Number 1     Page 24 of 31

## COUNT X: VIOLATION OF 18 U.S.C. § 1962(d) — RICO CONSPIRACY
### (Against All Defendants)

146. Plaintiff incorporates all preceding paragraphs.

147. Defendants Suthar, Chen, and John Does 1–10 unlawfully, knowingly, and willfully conspired and agreed to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

148. Specifically, each Defendant agreed that another conspirator would commit at least two predicate acts of racketeering activity in furtherance of the Enterprise's fraudulent purpose.

149. The existence of the conspiracy is demonstrated by, among other things: (1) Suthar's creation of the Telegram group specifically to introduce Spruill to Chen for the purpose of the fraudulent venture; (2) Suthar's and Chen's coordinated communications via Protonmail using the address cookerflips@proton.me; (3) Chen's pre-configuration of ChangeNOW swap transactions, which required advance planning and coordination, before Plaintiff's funds were transferred; (4) The coordinated use of operational security measures, anonymous Telegram handles, and Protonmail to conceal the conspiracy; (5) Suthar's and Chen's coordinated promotion and discussion of multiple fraudulent ventures; (6) Suthar's reported use of Bybit (UID 6281684901) to make intra-exchange transfers to Chen, a method that avoids on-chain tracing; and (7) Suthar's admission that he "feels responsible for all this."

150. As a direct and proximate result of Defendants' conspiracy to violate 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property in an amount no less than $3.7 million.

151. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold its damages plus the costs of this suit, including reasonable attorney's fees.

## COUNT XI: VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT (S.C. Code Ann. § 39-5-10 et seq. — Against All Defendants)

152. Plaintiff incorporates all preceding paragraphs.

24 of 31

153. The SCUTPA, S.C. Code Ann. § 39-5-20(a), declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce."

154. Defendants' conduct constitutes unfair or deceptive acts or practices in trade or commerce:

   a. False representations regarding the legitimacy of the ventures;
   b. Inducing cryptocurrency transfers under false pretenses;
   c. Pre-configuring laundering through ChangeNOW; and
   d. Accepting funds for projects never launched;

155. Defendants' conduct adversely affects the public interest because it is capable of repetition and involves a pattern of deceptive conduct directed at cryptocurrency investors.

156. Plaintiff suffered ascertainable loss exceeding $3.7 million.

157. Pursuant to S.C. Code Ann. § 39-5-140(a), Plaintiff is entitled to actual damages or $200 (whichever is greater), and treble damages upon a showing that Defendants' conduct was willful or knowing, plus reasonable attorney's fees and costs.

## COUNT XII: UNFAIR, UNLAWFUL, AND FRAUDULENT BUSINESS PRACTICES
### (Cal. Bus. & Prof. Code § 17200 et seq. — Against Defendant Chen)

158. Plaintiff incorporates all preceding paragraphs.

159. California Business and Professions Code § 17200 et seq. prohibits unlawful, unfair, or fraudulent business acts or practices. This claim is asserted against Chen, a California resident who directed the fraud from California, received stolen proceeds in California, and operates Pastel Alpha from California.

160. Chen's conduct constitutes "unlawful" business practices in violation of Cal. Penal Code §§ 484, 487, 496; 18 U.S.C. § 1030; and 18 U.S.C. § 1343 (wire fraud).

161. Chen's conduct constitutes "unfair" business practices because the gravity of harm to Plaintiff vastly outweighs any utility of Chen's conduct.

162. Chen's conduct constitutes "fraudulent" business practices because it is likely to deceive members of the public.

163. Plaintiff seeks restitution, disgorgement, and injunctive relief.

### COUNT XIII: RECEIVING STOLEN PROPERTY
### (Cal. Penal Code § 496(c) — Against Defendant Chen)

164. Plaintiff incorporates all preceding paragraphs.

165. California Penal Code § 496(a) prohibits receiving property obtained through theft, knowing it to be so obtained.

166. Cal. Penal Code § 496(c) provides a civil remedy: "Any person who has been injured by a violation of subdivision (a) ... may bring an action for *three times the amount of actual damages*, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." (emphasis added).

167. Chen received Plaintiff's cryptocurrency (or its proceeds), obtained through fraud constituting theft, knowing it was so obtained. Chen's pre-configuration of ChangeNOW swaps demonstrates advance knowledge that he was receiving stolen property.

168. Plaintiff is entitled to treble damages under § 496(c), plus costs and attorney's fees.

### COUNT XIV: PUNITIVE DAMAGES
### (Against All Defendants — S.C. Code Ann. § 15-32-520)

169. Plaintiff incorporates all preceding paragraphs.

170. Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's rights:

   a. Chen pre-configured the laundering of every transfer through ChangeNOW, demonstrating premeditation and a complete absence of good faith;
   b. Defendants employed sophisticated operational security to conceal the fraud;
   c. Suthar admitted responsibility and then abandoned communication;
   d. Neither Defendant has returned any funds, cooperated with investigation, or responded to counsel's demand;

171. Pursuant to S.C. Code Ann. § 15-32-520, Plaintiff is entitled to punitive damages upon clear and convincing evidence that Defendants' conduct was willful, wanton, or in reckless disregard of Plaintiff's rights.

## COUNT XV: CONSTRUCTIVE TRUST (EQUITABLE CLAIM)
### (Against All Defendants)

172. Plaintiff incorporates all preceding paragraphs.

173. Defendants obtained Plaintiff's cryptocurrency through fraud, in violation of the duties described herein.

174. Defendants' assets, including cryptocurrency held in on-chain wallets and exchange accounts, bank accounts, and all other assets traceable to Plaintiff's stolen funds, are imposed with a constructive trust in favor of Plaintiff.

175. Equity requires the imposition of a constructive trust because Defendants would be unjustly enriched if permitted to retain the benefit of their fraud.

176. Plaintiff is entitled to the imposition of a constructive trust on all assets traceable to the stolen cryptocurrency, and to equitable tracing of those assets through any number of transactions, conversions, or transfers.

## COUNT XVI : ACCOUNTING
### (Against All Defendants)

177. Plaintiff incorporates all preceding paragraphs.

178. Defendants received Plaintiff's funds under circumstances giving rise to a duty to account for the disposition of those funds.

179. Defendants have refused to provide any accounting of how Plaintiff's approximately $3.7 million was used, where it was transferred, or where it currently resides.

180. Plaintiff is entitled to a full equitable accounting from each Defendant of all funds received from Plaintiff and the current location and disposition of those funds and their proceeds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ms2 Capital, LLC respectfully prays that this Court enter judgment in its favor and against Defendants Raj Suthar, Huang Huang Chen, and John Does 1–10, jointly and severally where applicable, and grant the following relief:

I. **Emergency and Injunctive Relief**

   a. Enter an *ex parte* Temporary Restraining Order, substantially in the form of the proposed order submitted herewith, freezing all assets of Defendants Chen and Suthar, including but not limited to all cryptocurrency held in on-chain wallets, centralized and decentralized exchange accounts, and DeFi protocols; all fiat currency held in bank accounts (domestic and offshore), electronic payment accounts (including Cash App, Zelle, Venmo, and PayPal), and brokerage accounts (including Robinhood), pending a hearing on Plaintiff's application for a Preliminary Injunction;

   b. Authorize expedited third-party discovery, including the immediate issuance and service of *subpoenas duces tecum* upon ChangeNOW (CHN Group LLC) (as described below), Telegram (Telegram FZ-LLC / Telegram Messenger Inc.), BitGet (***mentioned in the Telegram chat message above***), Bybit (Bybit Virtual Asset Platform Operator L.L.C.), Robinhood (Robinhood Crypto LLC), Cash App / Block Inc., Zelle / Early Warning Services LLC, Change Lending LLC, Apple Inc., Coinbase.com, Wise (an offshore bank account maintained by Suthar), Kast (an offshore bank account maintained by Suthar), Helius (a Solana RPC platform), BipTap, Shuffle.com, and such other third parties as may be identified through ongoing forensic investigation, for the production of records as described in this Complaint;

   c. Require each Defendant, within seven (7) days of service of the Court's Order, to file a verified disclosure under oath identifying all assets, accounts, wallets, and property, whether held directly or indirectly, individually or jointly, domestically or internationally, within their possession, custody, or control, together with a sworn accounting of all funds received from Plaintiff and the current location and disposition of those funds;

   d. Following a hearing on notice, enter a Preliminary Injunction continuing and, if appropriate, expanding the asset freeze and other injunctive relief through trial;

   e. Upon final adjudication, enter a Permanent Injunction restraining Defendants from transferring, dissipating, concealing, encumbering, or destroying any assets traceable to Plaintiff's stolen funds;

   f. Impose a constructive trust, both preliminary and permanent, upon all assets traceable to Plaintiff's stolen cryptocurrency, wherever located and in whatever

form, including but not limited to real property, vehicles, cryptocurrency, fiat currency, and investment accounts;

## II.     Monetary Relief

a. Enter judgment in Plaintiff's favor and against Defendants, jointly and severally, for compensatory damages in an amount to be proven at trial, but no less than \$3.7 million, representing the aggregate value of Plaintiff's stolen cryptocurrency;

b. Award punitive damages against all Defendants pursuant to S.C. Code Ann. § 15-32-520, in an amount sufficient to punish Defendants for their willful, wanton, and reckless conduct and to deter similar conduct in the future, as established by clear and convincing evidence at trial;

c. Award treble damages against Defendant Chen pursuant to Cal. Penal Code § 496(c) for receiving stolen property;

d. Award treble damages against all Defendants pursuant to the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-140(a), upon proof that Defendants' conduct was willful or knowing;

e. Award treble damages against all Defendants pursuant to 18 U.S.C. § 1964(c) (RICO), plus costs and reasonable attorney's fees;

f. Award full restitution of all funds stolen from Plaintiff and disgorgement of all profits, gains, and benefits obtained by Defendants as a result of their wrongful conduct;

g. Award pre-judgment interest on all compensatory damages from the date of each wrongful transfer at the highest rate permitted by applicable law, and post-judgment interest as provided by 28 U.S.C. § 1961;

## III.     Fees, Costs, and Other Relief

a. Award Plaintiff its reasonable attorneys' fees pursuant to Cal. Penal Code § 496(c), S.C. Code Ann. § 39-5-140(a), and any other applicable statutory or contractual basis, and as may be awarded in the Court's equitable discretion;

b. Award Plaintiff its costs of suit, including all forensic investigation and expert witness costs incurred in connection with the tracing and identification of stolen assets and the identification of Defendants;

c. Award Plaintiff its expenses of litigation, including the costs of the investigation, blockchain forensic analysis, and all other costs necessarily incurred in pursuing this action;

d. Grant Plaintiff leave to amend this Complaint to add parties, claims, or remedies as additional facts are developed through discovery;

e. Grant such other and further relief as this Court deems just, equitable, and proper under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury.

[*Signature Page to Follow*]

Respectfully submitted,


By:     /s/ Joseph P. Carlasare
        Joseph P. Carlasare (*Pro Hac Vice Forthcoming*)
        AMUNDSEN DAVIS, LLC
        150 North Michigan Avenue, Suite 3500
        Chicago, Illinois 60601
        Telephone: (312) 894-3200
        Facsimile:  (312) 894-3210
        jcarlasare@amundsendavislaw.com,


By:     /s/ Mark V. Gende
        Mark S. Barrow, Esq., Fed. I.D. No. 1220
        Mark V. Gende, Esq., Fed. I.D. No. 9448
        Sweeny, Wingate & Barrow, PA
        1515 Lady St.
        Columbia, SC 29201
        Telephone: (803) 256-2233
        Facsimile: (803) 256-9177

        **ATTORNEYS FOR PLAINTIFF**

## **VERIFICATION**

I, *C. Micah Spruill*, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.  I am the Managing Partner of Ms2 Capital, LLC, the Plaintiff in the above-captioned action. I am authorized to execute this verification on Plaintiff's behalf.

2.  I have read the foregoing Verified Complaint and know the contents thereof.

3.  The factual statements contained in the Verified Complaint are true and correct based on my own personal knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

4.  I am competent to testify to the matters stated herein and would so testify if called as a witness.

**Executed on** _____ March 27 _____, **2026.**

_____
**C. Micah Spruill**