UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

MS2 CAPITAL, LLC, a Georgia
Limited Liability Company,

Plaintiff,

v.

RAJ SUTHAR, an individual,
and HUANG HUANG CHEN, a/k/a "ROMAN,"
a/k/a "COOKERFLIPS,"
a/k/a "WEFREEZETIME,"
a/k/a "TIMEFREEZE," a/k/a "LUCKY CHEN,"
an individual, and JOHN DOES 1-10,

Defendants.

Case No. 2:26-cv-01319-RMG

**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, ASSET FREEZE, AND EXPEDITED THIRD-PARTY DISCOVERY**

NOW COMES Plaintiff Ms2 Capital, LLC ("Ms2 Capital"), by and through its undersigned attorneys, Joseph P. Carlasare of Amundsen Davis, LLC and Mark V. Gende, Esq., Sweeny, Wingate & Barrow, PA, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 65(b), for an *ex parte* Temporary Restraining Order ("TRO") freezing the assets of Defendants Raj Suthar ("Suthar") and Huang Huang Chen ("Chen") (collectively, "Defendants"), a Preliminary Injunction following a hearing on notice, and authorization for expedited third-party discovery. In support, Plaintiff states as follows:

## I. INTRODUCTION

1. Defendants stole approximately $3.7 million from Plaintiff by inducing it to transfer Solana ("SOL") cryptocurrency for purported investment ventures that never existed.

2. Over eighty percent (80%) of the funds that Plaintiff transferred were immediately routed through ChangeNOW, a non-custodial cryptocurrency exchange favored by cybercriminals for its

1

anonymity, in a laundering operation that Defendant Chen pre-configured before Plaintiff's funds ever left its possession. (Verified Compl. ("Compl.") ¶¶ 2, 56–62).

3. The on-chain forensic trail for every transfer to Chen terminates at ChangeNOW's internal hot wallets. (Compl. ¶¶ 59–62). Without an immediate freeze on Defendants' identifiable assets and expedited discovery from ChangeNOW and other third parties to trace the stolen funds to their current location, Plaintiff's ability to obtain any meaningful recovery will be permanently destroyed.

4. Both Defendants have gone silent. Chen has not communicated since February 1, 2026. (Compl. ¶ 80). Suthar failed to respond to counsel's preservation letter. (Compl. ¶ 82). Suthar has admitted in writing to maintaining offshore bank accounts for tax evasion (Compl. ¶ 75), and Chen has demonstrated sophisticated cryptocurrency laundering capabilities. The risk of further dissipation is immediate and acute.

5. Plaintiff seeks two forms of emergency relief that operate in tandem.

6. First, an immediate freeze on Defendants' financial and cryptocurrency accounts, including exchange accounts, electronic payment accounts, and on-chain wallets, to prevent further dissipation of the specific types of assets most susceptible to instantaneous, irreversible transfer.

7. Second, expedited third-party discovery from ChangeNOW and other entities to trace the laundered funds to their current location and identify additional freezable assets, with express authorization to return to this Court on an emergency basis to expand the freeze as those assets are identified.

8. The freeze preserves liquid, crypto assets that can vanish in seconds. The discovery is the only means of tracing funds deliberately routed through an anonymizing exchange. Together with

a sworn accounting from Defendants, compelled as a term of the TRO, they constitute the relief necessary to preserve any possibility of meaningful recovery.

## II.  FACTUAL BACKGROUND

9. Plaintiff incorporates by reference the factual allegations of the Verified Complaint and the Declaration of C. Micah Spruill filed herewith, and summarizes the essential facts below.

10. Defendant Suthar cultivated a relationship of trust with Spruill in Charleston, South Carolina beginning in 2022. (Compl. ¶¶ 27–30). In July 2025, Suthar introduced Spruill to "Roman," represented as a prominent cryptocurrency Key Opinion Leader ("KOL") with over 133,000 followers (@CookerFlips), who communicated anonymously through the Telegram handle @WeFreezeTime. (Compl. ¶¶ 35–42).

11. Substantial evidence establishes that @WeFreezeTime and @CookerFlips are the same person: Defendant Huang Huang Chen as set forth in the Verified Complaint. (Compl. ¶¶ 43–49).

12. Based on Suthar's introduction and Chen's fabricated venture proposals, Plaintiff transferred:

   a.  Approximately $2.5 million in Solana cryptocurrency to Chen; and
   b.  Approximately $1.2 million in Solana cryptocurrency to Suthar.

(Compl. ¶¶ 50–51, 54, 63, 67).

13. None of these ventures materialized and no funds have been returned. (Compl. ¶ 10).

14. All of these transactions can be established through on-chain tracing of the funds.[1]

---

[1] "On-chain" refers to transactions that are permanently recorded on a blockchain, the public, immutable digital ledger that underlies cryptocurrencies such as Solana. Because every transfer of cryptocurrency is cryptographically signed and recorded on the blockchain, the movement of funds from one wallet address to another can be independently verified and traced by analyzing the blockchain's transaction history.

15. A third-party professional forensic investigation confirmed that every one of the Aeturnum receiving addresses was a ChangeNOW deposit address. (Compl. ¶ 56). An expert witness is prepared to testify and lay a foundation for this opinion upon request by this Court.

16. ChangeNOW is an instant cryptocurrency exchange that functions as a *de facto* mixing service.

17. ChangeNOW generates deposit addresses only after a user initiates a swap order.

18. This means Chen selected a destination asset, a destination blockchain, and his own receiving wallet before instructing Spruill to send funds. (Compl. ¶ 59).

19. From Spruill's perspective, the transfer appeared indistinguishable from a peer-to-peer transaction. (Compl. ¶ 60).

20. Once SOL arrived at the deposit address, ChangeNOW automatically swept it to a hot wallet, executed the pre-configured conversion, and sent the equivalent value to Chen's pre-selected destination, potentially in a different cryptocurrency, on a different blockchain. (Compl. ¶ 60).

21. The forensic trail terminates at ChangeNOW's hot wallet. Further tracing is impossible without subpoena authority. (Compl. ¶ 63).

22. In January 2026, Chen (as @WeFreezeTime) claimed return of funds to Plaintiff was "in process" and promised to make Plaintiff whole. (Compl. ¶¶ 78-79).

23. Upon information and belief, Defendants are struggling with liquidity and potential insolvency issues.

24. On December 29, 2025, Defendant Suthar wrote to Plaintiff advising that he "wan[ted] to cry lol" as his portfolio was down approximately $11.24 million.



25. On February 1, 2026, Chen, also complaining about financial hardship, wrote to Plaintiff advising as follows:



26. Since February 1, 2026, Chen has been completely unresponsive to outreach. (Compl. ¶ 80).

27. Suthar admitted in writing that he "feels responsible for all this" and would "take care of any losses" before he stopped responding. (Compl. ¶¶ 75, 82-83).

5

28. During Plaintiff's interactions with Defendants, they employed rolling deletion, Protonmail, anonymous Telegram handles, and untraceable exchange transfers throughout.[2] (Compl. ¶¶ 4, 42, 45, 71).

### III. LEGAL STANDARD

29. The standard for a TRO and preliminary injunction is identical. *Commonwealth of Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir. 1994). A plaintiff must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent relief; (3) that the balance of equities tips in its favor; and (4) that an injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Rule 65(b)(1) authorizes ex parte TROs where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

### IV. ARGUMENT

**A. This Court Possesses Equitable Authority to Freeze Defendants' Assets.**

30. The Supreme Court's prohibition on prejudgment asset restraints applies only in actions "for money damages" where the plaintiff claims "no lien or equitable interest" in the defendant's property. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999).

---

[2]  These measures warrant brief explanation. "Rolling deletion" (also known as "disappearing messages") is a feature available on the Telegram messaging platform that automatically and permanently destroys messages after a user-selected time interval, as short as one day, eliminating any record of the communication from both parties' devices. Protonmail is an end-to-end encrypted email service headquartered in Switzerland that, by design, cannot access or produce the contents of its users' emails in response to legal process, making it the communication platform of choice for individuals seeking to avoid accountability. Telegram permits users to communicate under anonymous "handles" (here, @WeFreezeTime and @CookerFlips) without revealing their real name, phone number, or other identifying information to the counterparty. Finally, ChangeNOW is a "non-custodial" or "instant" cryptocurrency exchange that converts one cryptocurrency into another without requiring identity verification (commonly referred to as "KYC" or Know-Your-Customer), effectively functioning as a digital money laundering service by severing the on-chain connection between incoming and outgoing funds. Taken together, these measures demonstrate a calculated, premeditated effort by Defendants to ensure that no recoverable evidentiary trail would exist, precisely the kind of conduct that makes *ex parte* relief and an immediate asset freeze necessary.

31. Plaintiff seeks the equitable remedy of a constructive trust over specifically identifiable property obtained through fraud (Compl. ¶¶ 172–176), as well as equitable accounting (Count XVI), unjust enrichment (Count V), and injunctive relief under the CFAA (Count VII). These equitable claims vest Plaintiff with a cognizable interest in Defendants' assets and place this case squarely within the recognized exception to *Grupo Mexicano*.

32. The Fourth Circuit has squarely held that where a plaintiff seeks both money damages and equitable relief, including the imposition of a constructive trust, a district court possesses equitable authority to enter a preliminary injunction freezing assets. *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 492, 494–95 (4th Cir. 1999).

33. "There is an exception to the general ban on prejudgment asset restraints where an equitable remedy is sought." *Nail Alliance, LLC v. TTN Beauty*, No. 21-3140, 2021 U.S. Dist. LEXIS 44749, 2021 WL 2646989, at *2, 6 (D. N.J. 2021).

34. In *Time 2 Shine BMX LLC v. McEvoy*, No. 2:25-cv-08265-DCN, 2025 U.S. Dist. LEXIS 142769 (D.S.C. July 25, 2025), the Court granted an *ex parte* TRO freezing bank accounts in a fraud case seeking rescission and a constructive trust, holding that "federal courts have the authority to freeze bank accounts and other assets" in such actions. *Id.* at *6.

35. Courts have frozen cryptocurrency as an asset in fraud cases. *See In re Sanctuary Belize Litig.*, 408 F. Supp. 3d 650, 654 (D. Md. 2019) (defining "Asset" to include "digital currencies, virtual currencies, digital tokens, and cryptocurrencies"); *Bellis v. Kelly*, 797 F. Supp. 3d 431, 436–39 (D.N.J. 2025) (granting TRO freezing stolen cryptocurrency across five exchanges); *Ramirez v. Defendant "1"*, No. 25-cv-01576, 2025 U.S. Dist. LEXIS 259066 (E.D. La. Aug. 28, 2025) (granting ex parte TRO freezing cryptocurrency in wallets and at ChangeNOW, Bybit, and Exolix exchanges after funds were laundered through those platforms).

7

36. Courts have recognized that in cases involving theft of cryptocurrency, the threat of dissipation and concealment gives rise to immediate and irreparable harm. *Mirashi v. Doe*, 2025 U.S. Dist. LEXIS 45184, 2025 WL 783353, at *11, 12 (D.N.J. 2025) (collecting cases); see also *Licht v. Tina Ling*, No. 23-1018, 2023 U.S. Dist. LEXIS 122075, 2023 WL 4504585, at *3, 8 (N.D. Tex. 2023) ("The Court finds that freezing the alleged fraudsters' wallets is the proper relief and is the only feasible way to prevent irreparable harm to *Licht* at this stage."); *Jacobo v. Doe*, No. 22-00672, 2022 U.S. Dist. LEXIS 101504, 2022 WL 2052637, at *3, 10–11 (E.D. Cal. 2022) ("[T]he fact that the assets at issue here are held in cryptocurrency weighs in favor of the granting of injunctive relief and a freezing of the assets because there is a high risk of asset dissipation with cryptocurrency.").

37. Irreparable harm exists where, absent an asset freeze, defendants are likely to dissipate or fraudulently convey the very assets necessary to satisfy a judgment. *Elliott v. Kiesewetter*, 98 F.3d 47, 58 (3d Cir. 1996) (affirming freeze order to prevent "consumption, dissipation or fraudulent conveyance" of assets subject to potential recovery).

38. A federal court has found that "[t]he threatened injury here, Plaintiff's loss of over $200,000 worth of cryptocurrency, outweighs any possible harm of freezing the cryptocurrency wallets Destination Addresses since the wallets contain Plaintiff's stolen assets due to the alleged unlawful activity of Defendants." *Maoying Song v. Defendant*, 2024 U.S. Dist. LEXIS 148786, 2024 WL 4632242, at *8 (M.D. Fla. 2024) (TRO in cryptocurrency fraud case furthers public interest by promoting objectives of Financial Crimes Enforcement Network).

39. Granting injunctive relief promotes the public interest by deterring digital asset theft, aiding law enforcement investigations, and supporting the integrity of the financial system, including compliance with anti-money laundering obligations. *See Licht*, 2023 U.S. Dist. LEXIS

8

122075, 2023 WL 4504585, at *7 (finding that "an injunction would serve the public interest because it will dissuade would-be fraudsters from stealing, laundering illegal proceeds, and preying on Americans."); *Gaponyuk v. Alferov*, No. 23-01317, 2023 U.S. Dist. LEXIS 125262, 2023 WL 4670043, at *7 (E.D. Cal. 2023) (finding that "a temporary asset freeze will serve the public's interest in stopping, investigating and remedying frauds."); *Yogaratnam v. Dubois*, No. 24-393, 2024 U.S. Dist. LEXIS 31033, 2024 WL 758387, at *5 (E.D. La. 2024) (TRO in cryptocurrency case promotes objectives of Treasury Department and provides assurance that courts will protect and aid investors in their recovery of stolen assets).

### B. Plaintiff is Likely to Succeed on the Merits.

40. Plaintiff need not demonstrate a likelihood of success on every cause of action. Success on any one claim supporting equitable relief is sufficient. *See Bellis*, 797 F. Supp. 3d at 436.

41. Plaintiff transferred approximately $3.7 million for ventures that never existed, to addresses that were pre-configured ChangeNOW laundering conduits, orchestrated by Defendants who have since become nonresponsive.

42. Defendants made material misrepresentations about the legitimacy of the ventures, the intended use of funds, and the safety of the transferred cryptocurrency. (Compl. ¶¶ 88–94).

43. Chen's pre-configuration of ChangeNOW swap orders before the transfers proves actual knowledge and premeditation. (Compl. ¶ 88).

44. Under South Carolina law, a constructive trust "arises whenever a party has obtained money which does not equitably belong to him and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it." *SSI Med. Servs. v. Cox*, 301 S.C. 493, 500, 392 S.E.2d 789, 793 (1990).

45. Defendants obtained $3.7 million through fraud. Those funds, their traceable proceeds, and assets acquired with those proceeds are properly subject to a constructive trust. (Compl. ¶¶ 172–176).

46. Defendants also used protected computers to further fraud and obtain Plaintiff's cryptocurrency exceeding $5,000, in violation of 18 U.S.C. § 1030(a)(4). Section 1030(g) provides an independent statutory basis for injunctive relief. (Compl. ¶¶ 120–124).

### C.  Plaintiff Will Suffer Irreparable Harm Absent Relief.

47. Courts uniformly recognize that the theft of cryptocurrency gives rise to immediate and irreparable harm due to the unique characteristics of digital assets. As the *Ramirez* court found in granting a TRO involving cryptocurrency, "[C]onsidering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiff." *Ramirez*, 2025 U.S. Dist. LEXIS 259066, at *7–8. *See also Bellis*, 797 F. Supp. 3d at 437 ("Courts have recognized that in cases involving theft of cryptocurrency, the threat of dissipation and concealment gives rise to immediate and irreparable harm.") (collecting cases); *Jacobo v. Doe*, No. 22-00672, 2022 U.S. Dist. LEXIS 101504, at *10–11 ("[T]he fact that the assets at issue here are held in cryptocurrency weighs in favor of the granting of injunctive relief . . . because there is a high risk of asset dissipation with cryptocurrency.").

48. Chen pre-configured ChangeNOW swap orders for nearly all the transfers he received from Plaintiff, proving a systematic, premeditated laundering methodology. (Compl. ¶¶ 56–62).

49. This consisted of 15 consecutive acts of pre-orchestrated laundering over two months. There is every reason to believe Chen will continue deploying these techniques if given any advance warning.

50. Suthar maintains offshore bank accounts for the express purpose of hiding assets from government authorities. (Compl. ¶ 75). A defendant who admits to using offshore accounts for tax evasion will not hesitate to use the same infrastructure to evade a civil judgment.

51. Both Defendants have ceased all communication following admissions of responsibility and broken promises to return funds. (Compl. ¶¶ 74, 77–82).

52. This silence signals that Defendants are no longer engaged in any pretense of cooperation, dramatically escalating the risk of dissipation.

53. The on-chain trail has already been severed at ChangeNOW's hot wallets. (Compl. ¶ 60). Without a freeze on identifiable assets and expedited discovery to trace the laundered funds, any future judgment will be rendered meaningless. *See also Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) ("[I]rreparable harm may still exist where…damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected.").

54. Defendants have recently admitted to liquidity issues and/or financial hardship. See ¶¶ 24-25. This supports a showing of irreparable harm. See *Time 2 Shine*, 2025 U.S. Dist. LEXIS 142769, at *14 (finding irreparable harm based on defendant's "apparent fraudulent acts . . . [and] admitted insolvency, . . . unwillingness to return the purchase money"); *Hayward Indus., Inc. v. Ningbo C.F. Electronic Tech Co.*, 2024 U.S. Dist. LEXIS 66688, at *2, 6 (W.D. N.C. 2024) ("The harm Plaintiff identifies--inability to collect on the judgment in this matter would be irreparable.") (citing *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994)).

### D. The Balance of Equities and Public Interest Favor Relief.

55. Plaintiff has lost $3.7 million through fraud. Expedited discovery and a freeze merely preserve the *status quo.* They ensure Defendants cannot further launder and/or dissipate proceeds

of fraud to which they have no legitimate claim. *Bellis*, 797 F. Supp. 3d at 438 (where "the assets at issue rightfully belong to Plaintiff and nobody else," "there is no apparent harm to others or to the public interest"); *Ramirez*, 2025 U.S. Dist. LEXIS 259066, at *8 ("it appears from the record that Defendant[s] . . . have no right to claim either possession or ownership of Plaintiff's stolen assets"); *Time 2 Shine*, 2025 U.S. Dist. LEXIS 142769, at *15–16 ("Plaintiff is the party who appears to have been defrauded . . . and the injunctive relief sought will merely preserve the status quo").

56. To the extent Defendants have legitimate need for frozen funds, they may apply to the Court for a modification.

57. Freezing stolen cryptocurrency serves the public interest. *Ramirez*, 2025 U.S. Dist. LEXIS 259066, at *8 (granting TRO "will also not harm the public interest, which is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] . . . and providing assurance that courts will protect investors' assets from theft").

58. The public interest is further heightened here by Plaintiff's RICO claims, and by the use of ChangeNOW, a platform specifically identified as a popular choice for money laundering by cybercriminals. (Compl. ¶ 59).

59. Providing advance notice would render the freeze meaningless. Chen can execute a ChangeNOW swap in minutes, converting cryptocurrency across blockchains before any order could take effect. Suthar can move funds to his admitted offshore accounts with equal speed.

60. Courts routinely grant *ex parte* TROs in cryptocurrency fraud cases for this precise reason. *Bellis*, 797 F. Supp. 3d at 438–39 (notice not required where "alerting Defendants that Plaintiff is seeking an asset freeze would likely prompt them to take more extreme measures to further 'conceal and dissipate the stolen Bitcoin and Solana Coin'"); *Gaponyuk v. Alferov*, No. 23-01317,

2023 U.S. Dist. LEXIS 125262, at *2, 4 (E.D. Cal. 2023) ("It is appropriate in these circumstances to consider [plaintiff]'s application without first giving notice to the defendants," because of the risk of cryptocurrency being rapidly moved and becoming untraceable).

61. The specific facts warranting *ex parte* relief include: (a) Chen's demonstrated ability to launder funds instantaneously through ChangeNOW (Compl. ¶¶ 56–62); (b) Suthar's admitted offshore accounts (Compl. ¶ 75); (c) both Defendants' cessation of all communication (Compl. ¶¶ 80-81); (d) the inherent speed and anonymity of cryptocurrency transfers; and (e) Defendants' deliberate use of operational security to conceal the fraud (Compl. ¶¶ 4, 42, 45).

### E.  A Nominal Bond Is Appropriate.

62. District courts have discretion to require only a nominal bond. *Bellis*, 797 F. Supp. 3d at 439; *Time 2 Shine*, 2025 U.S. Dist. LEXIS 142769, at *18–19 ($500 bond in this Division).

63. Plaintiff respectfully requests a bond of $1,000 or such other nominal amount as the Court deems proper.

### V.  ASSET FREEZE ON DEFENDANTS' FINANCIAL AND CRYPTOCURRENCY ACCOUNTS

64. In addition to the general injunctive relief set forth in Section IV, Plaintiff seeks a freeze on specific, identified financial and cryptocurrency accounts held by or for Defendants at the following institutions.

65. These accounts hold assets that can be drained, transferred, or converted in minutes and represent the category of assets most susceptible to instantaneous, irreversible dissipation.

### *Defendant Chen*

66. **Cash App / Block Inc**.: Chen maintains a Cash App account registered under his name with the username $CookerFlips. Cash App permits the sending and receiving of funds, including Bitcoin. All assets held in this account should be frozen.

13

67. **Zelle / Early Warning Services LLC**: Chen maintains a Zelle account registered under his name, associated with cell phone number XXX-XXX-9286 and email address XXXXXX@rit.edu. Zelle permits instantaneous, irrevocable peer-to-peer transfers. All assets accessible through this account should be frozen.

68. **Robinhood / Robinhood Crypto LLC**: Chen has publicly stated in recorded interviews that he used Robinhood for cryptocurrency trading. Robinhood permits trading in both securities and cryptocurrency, and funds can be withdrawn to external wallets or bank accounts. All assets held in any account maintained by Huang Chen, Huang Huang Chen, or Lucky Chen should be frozen.

69. **Bybit / Bybit Virtual Asset Platform Operator L.L.C**: Chen stated in written Telegram correspondence that he used the ByBit exchange and reported his user account ID as UID 4194620462. ByBit is a centralized cryptocurrency exchange that permits rapid withdrawal of digital assets. All assets held in any account maintained by or for Chen should be frozen.

70. **Bitget**: Chen stated in written Telegram correspondence that he used the **Bitget** exchange. Upon information and belief, Suthar also maintained an account on this exchange. Bitget is a centralized cryptocurrency exchange that permits rapid withdrawal of digital assets. All assets held in any account maintained by or for Defendants should be frozen.

71. **Coinbase, Inc**.: Upon information and belief, Chen maintains or has maintained accounts with Coinbase, one of the largest U.S.-based cryptocurrency exchanges. All assets held in any account maintained by or for Chen should be frozen.

72. All other cryptocurrency wallets, exchange accounts, and DeFi positions: Plaintiff requests that the freeze extend to any cryptocurrency wallet, exchange account, or decentralized finance position held by, for, or on behalf of Chen, whether or not specifically identified above.

*Defendant Suthar*

73. **Bybit / Bybit Virtual Asset Platform Operator L.L.C**.: Suthar maintained an account at Bybit and reported his user account ID as UID 6281684901. (Compl. ¶¶ 72–74). Suthar claims he used this account to transfer funds to Chen. All assets held in this account should be frozen.

74. **Kraken / Kraken Pro**: Suthar has stated in Telegram group chat that he used Kraken for cryptocurrency trading. Kraken permits trading in both securities and cryptocurrency, and funds can be withdrawn to external wallets or bank accounts. All assets held in any account maintained by Suthar should be frozen.

75. **Uphold**: Suthar stated to Plaintiff that holds $22 million in XRP on Uphold. All assets held in any account maintained by Suthar should be frozen.

76. All other bank accounts, cryptocurrency accounts, and electronic payment accounts: All bank accounts (domestic and offshore), cryptocurrency wallets, exchange accounts, and electronic payment accounts held by, for, or on behalf of Suthar should be frozen.

77. **Bitget**: Chen stated in written Telegram correspondence that he used the **Bitget** exchange. Upon information and belief, Suthar also maintained an account on this exchange. Bitget is a centralized cryptocurrency exchange that permits rapid withdrawal of digital assets. All assets held in any account maintained by or for Defendants should be frozen.

*Binding Effect on Third-Party Custodians*

78. Plaintiff requests that any financial institution, cryptocurrency exchange, payment provider, or other custodian that receives actual notice of the TRO be required to comply with the freeze with respect to any assets held by, for, or on behalf of either Defendant.

15

## VI. EXPEDITED THIRD-PARTY DISCOVERY

79. Separately from, but in support of, the asset freeze, Plaintiff seeks authorization for expedited third-party discovery pursuant to Federal Rules of Civil Procedure 26(d)(1) and 45, exempted from the meet-and-confer requirements of Rule 26(f).

80. Federal courts have issued expedited discovery in connection with TROs in fraud and cryptocurrency cases, applying a flexible good-cause standard that considers the breadth of the discovery, its purpose, the burden on the parties and third parties, and the need for speed. *In re Sanctuary Belize Litig.*, 408 F. Supp. 3d at 670–71 (authorizing broad discovery, including Rule 45 subpoenas, to discover "the nature, location, status, and extent of Defendants' . . . Assets"); *Bellis v. Kelly*, 797 F. Supp. 3d at 440 (requiring sworn accounting of all wallets and transactions held by individuals within five days as part of TRO).

81. Good cause exists here because the discovery is narrowly tailored to specific, identified transactions, is needed to trace stolen assets through an anonymizing exchange, and is time-sensitive because every day of delay permits further dissipation.

82. The asset freeze and expedited discovery serve complementary but distinct functions. The freeze preserves known, identifiable accounts. The discovery is needed to trace the approximately $2.5 million that Chen deliberately routed through ChangeNOW, severing the on-chain forensic trail.

83. Without ChangeNOW's internal records, specifically, the destination wallet addresses for each swap, the constructive trust this Court is asked to impose cannot attach to the bulk of Plaintiff's stolen funds.

84. Every day of delay is a day in which those funds may be further dissipated, swapped, or moved beyond the reach of any court.

85. Plaintiff requests authority to immediately issue and serve *subpoenas duces tecum* on the following entities:

**ChangeNOW (CHN Group LLC)**

86. ChangeNOW served as the primary laundering instrumentality for all 15 Aeturnum transfers. (Compl. ¶¶ 56–64). Each of the 15 receiving addresses was a ChangeNOW deposit address, pre-configured by Chen before Plaintiff's funds were sent. The on-chain trail terminates at ChangeNOW's internal hot wallets.

87. According to its website, the legal registration address for ChangeNOW is: CHN Group LLC Euro House, Richmond Hill Road Kingstown, Saint Vincent, and the Grenadines. See https://changenow.io/law-enforcement-request-guidelines.

88. Also according to its website, ChangeNOW "maintains a commitment to cooperating with duly authorized law enforcement agencies while upholding our paramount obligation to user privacy and data protection. These guidelines delineate the procedures and requirements for submitting, processing, and responding to law enforcement requests for information." It further states that:

> **Mandatory Requirements**
> All requests must contain, without limitation:
> 1. Full legal designation of the requesting authority
> 2. Complete credentials of the authorized officer(s)
> 3. Official contact information for verification purposes
> 4. Detailed specification of the information being requested
> 5. Comprehensive legal basis and jurisdiction under which the request is made
> 6. All pertinent case identifiers and reference numbers

*See* https://changenow.io/law-enforcement-request-guidelines.

89. ChangeNOW's records are the bridge between the documented theft and the identification of the wallets where Plaintiff's stolen funds currently reside.

90. Plaintiff seeks the following records, narrowly tailored to the 15 specific Aeturnum transactions identified by deposit address, amount, asset type, and timestamp:

   a. The swap order ID corresponding to each deposit address;
   b. The destination asset type and destination blockchain selected by the user for each swap;
   c. The beneficiary/destination wallet address to which ChangeNOW sent the converted assets for each swap;
   d. Any KYC or identity verification records, IP address logs, and device identifiers associated with the swap orders;
   e. Timestamped internal ledger entries for each transaction;
   f. Any email address provided by the user in connection with the swap orders; and
   g. Any communications between the user and ChangeNOW support relating to these transactions.

91. Because Chen pre-configured the swap orders, the destination wallets are wallets Chen himself selected. No legitimate third-party privacy interest outweighs Plaintiff's right to trace its stolen property.

92. Plaintiff further requests authorization to serve similar discovery on ChangeNOW for the approximately 30 SZN transactions once forensic analysis of those transfers is complete.

**Bybit (Bybit Virtual Asset Platform Operator L.L.C.)**

93. Suthar claimed to have transferred funds to Chen through Bybit UID 4194620462. (Compl. ¶¶ 72–73). Intra-exchange Bybit transfers cannot be traced on-chain. Only Bybit's internal records can identify the recipient and verify the transactions.

94. Plaintiff seeks all account records, transaction history, and KYC/AML records for UID 4194620462, including the identity of the account holder, all internal transfers to or from this UID, and destination information for any withdrawals.

**Bitget**

95. Chen stated in written Telegram correspondence that he used the Bitget exchange.

18

96. Plaintiff seeks all account records, transaction history, and KYC/AML records for any account held by or associated with Huang Chen, Huang Huang Chen, Lucky Chen, or any alias or email address associated with Chen, including deposit and withdrawal addresses, internal transfer records, and login/IP logs.

### Robinhood (Robinhood Crypto LLC)

97. Chen publicly stated in a recorded interview that he used Robinhood for cryptocurrency trading.

98. Plaintiff seeks all account records, transaction history, and KYC/AML records for any account held by or associated with Huang Chen, Huang Huang Chen, or Lucky Chen, including linked bank accounts, cryptocurrency deposit and withdrawal addresses, and login/IP logs.

### Cash App / Block Inc.

99. Chen maintains a Cash App account with the username $CookerFlips, registered to Huang Chen.

100. Plaintiff seeks all account records, transaction history, and KYC/AML records for this account and any other account associated with Chen, including linked bank accounts, Bitcoin wallet addresses, and peer-to-peer transfer records.

### Zelle / Early Warning Services LLC

101. Chen maintains a Zelle account registered to Huang Chen, associated with cell phone number XXX-XXX-9286 and email XXXXXXX@rit.edu.

102. Plaintiff seeks all account records, transaction history, and associated bank account identifiers for this account and any other Zelle account associated with Chen.

19

*Telegram (Telegram FZ-LLC / Telegram Messenger Inc.)*

103. All substantive communications directing the fraud occurred through the Telegram account @WeFreezeTime. (Compl. ¶¶ 42–49).

104. Plaintiff seeks all account registration data, login logs, IP addresses, device identifiers, and phone numbers associated with @WeFreezeTime, as well as any associated accounts, linked phone numbers, or alternate usernames.

### REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an *ex parte* Order as follows:

#### A. Asset Freeze

1. Restraining and enjoining Defendants, their agents, servants, employees, attorneys, and all persons acting in active concert or participation with them who receive actual notice of this Order, from directly or indirectly transferring, selling, assigning, dissipating, concealing, encumbering, or otherwise disposing of any assets held by, for, or on behalf of Defendants, including but not limited to:
   a. All cryptocurrency in any on-chain wallet, exchange account, or DeFi protocol;
   b. All bank accounts, domestic and offshore;
   c. All electronic payment accounts (Cash App, Zelle, Venmo, PayPal, and others);
   d. All assets held at ChangeNOW, Bybit, Bitget, BipTap, Robinhood, Coinbase, or any other exchange;
   e. All assets held at or gained from Shuffle.com; and
   f. Any other assets traceable to Plaintiff's stolen funds.
2. Imposing a constructive trust over all assets traceable to Plaintiff's stolen cryptocurrency.
3. Requiring each Defendant, within seven (7) days of service, to file a verified disclosure under oath identifying all assets, accounts, wallets, and property within their possession, custody, or control, together with a sworn accounting of all funds received from Plaintiff and the current disposition of those funds.

#### B. Expedited Discovery

4. Authorizing the immediate issuance and service of *subpoenas duces tecum* upon the entities identified in Section VI above, and exempting Plaintiff from the requirements of Rules 26(d) and 26(f) with respect to this discovery.
5. Directing third parties to produce responsive records within ten (10) days of service, or such shorter period as the Court deems appropriate.

### C.  Nominal Bond

6.  Setting the bond at $1,000 or such other nominal amount as the Court deems proper.

### D.  Scheduling and Duration

7.  Scheduling a preliminary injunction hearing at the earliest practicable date.
8.  Ordering that the TRO remain in effect for fourteen (14) days from entry, unless extended for good cause or by consent. See Fed. R. Civ. P. 65(b)(2).

### E.  Service

9.  Authorizing service of the TRO and all related papers upon Defendants by electronic mail, personal service, or any other means authorized by law, within two (2) days of the date of the Order.
10. Requiring any financial institution, cryptocurrency exchange, or other entity that receives actual notice of this Order to comply with its terms with respect to any assets held by, for, or on behalf of Defendants.

### F.  Other Relief

11. Granting such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,


By:    /s/ Joseph P. Carlasare
       Joseph P. Carlasare (*Pro Hac Vice Forthcoming*)
       AMUNDSEN DAVIS, LLC
       150 North Michigan Avenue, Suite 3500
       Chicago, Illinois 60601
       Telephone: (312) 894-3200
       Facsimile:  (312) 894-3210
       jcarlasare@amundsendavislaw.com,


By:    /s/ Mark V. Gende
       Mark S. Barrow, Esq., Fed. I.D. No. 1220
       Mark V. Gende, Esq., Fed. I.D. No. 9448
       Sweeny, Wingate & Barrow, PA
       1515 Lady St.
       Columbia, SC 29201
       Telephone: (803) 256-2233
       Facsimile: (803) 256-9177

**ATTORNEYS FOR PLAINTIFF**

21